Filed 6/27/13  P. v. Toles CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B238407 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. NA078591) |
| MARCUS DONZELL TOLES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rand S. Rubin, Judge.  Affirmed in part, reversed in part and remanded with directions.

Leonard J. Klaif; and Elizabeth A. Courtenay, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Tita Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant, Marcus Donzell Toles, appeals his conviction for second degree commercial burglary, conspiracy to commit robbery, and possession of a firearm by a felon, with principal armed, prior serious felony conviction and prior prison term enhancement findings (Pen. Code, §§ 459, 182, subd. (a)(1), 211, 12021 (former), 12022, 667, subds. (a)-(i), 667.5).[1] He was sentenced to state prison for a term of 22 years and 4 months.

The judgment is affirmed in part, reversed in part and remanded with directions.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *Prosecution evidence.*

Rosa Medina is the branch manager of a Nix check cashing store on Obispo Avenue in Long Beach. The store is open seven days a week and normal business hours are from 9:00 a.m. until 7:00 p.m. These business hours are posted at the front of the store.

The store has seven teller windows which are protected by bulletproof glass. During the day, the tellers' drawers contain cash. Each night, the cash is removed from the tellers' drawers and placed into a safe. The tellers cash checks and sell money orders which, if properly filled out, are like cash.

Signs posted inside the Nix store announce: "Robbery Prevention. The safe is equipped with both a time lock and time delay system to prevent robbery. Employees do not have the ability to disable the alarm or access the safe when the store is closed. Audio and video systems monitor employee area 24 hours a day." Medina testified that, in order to open the safe where the cash is kept, "We enter a safe combination. We wait 30 minutes. After those 30 minutes, we reenter our safe number combo and then it opens."

---

[1]     All further statutory references are to the Penal Code unless otherwise specified.

At about 6:20 a.m. on May 31, 2008, Long Beach Police Officers responded to a silent alarm at the Nix check cashing store.  There were pry marks on the store's back door and it was bowed in the middle; someone had apparently tried to force entry. The front door was locked and there did not appear to be anyone inside the store.

Officers heard the sound of power tools coming from the roof.  When Officer Raymond Panek climbed a ladder onto the roof of the building, he spotted Tavaron Mitchell.  Mitchell had a dark object in his hand which Panek thought was a gun.  Panek ordered him to drop the object and show his hands.  Instead, Mitchell put the object in his waistband and moved toward an air conditioning duct.  When Mitchell continued to ignore the officers' orders to surrender, Panek fired several shots at him.

At this point, Panek saw defendant Toles emerge from an air conditioning duct. Toles did not have anything in his hand.  By this time, Officer Brian Neal had arrived on the roof.  Neal and Panek saw Toles and Mitchell climb on top of an air conditioning unit and escape by climbing over a wall.  At this point, Michael Bourgeois appeared on the roof.  He complied with orders to surrender and was taken into custody.  Bourgeois did not have a weapon on him.

In a crawlspace under the building's roof, police discovered two duffle bags and a power saw.  There were two linear cut marks in the crawlspace floor which appeared to have been made by a saw.  These cuts were in the area above the Nix store.  Inside a blue duffle bag, police found three ski masks, a loaded .32 caliber semiautomatic handgun, a loaded .45 caliber semiautomatic handgun, a pair of bolt cutters, a crowbar and a 16-inch Stanley hammer.  Another crowbar was lying next to the blue duffle bag.  Inside a black duffle bag, police found a crowbar, a Black & Decker "Sawzall" with a spare battery, and a 7¼ inch circular Skill saw blade.  A Black & Decker circular saw with a blade attached was found next to the duffle bags; the saw's blade was sticking out of the wooden floorboard.

Detective Troy Bybee of the Los Angeles Police Department was an expert in the field of safe burglaries.  Without possessing a safe's combination, the "typical burglar would use . . . a torch or a thermal lance to cut through solid steel, or . . . a carbon metal

cutting blade."  None of the tools or guns that police found in the crawlspace would have been capable of penetrating the Nix store safes.  Bybee also testified commercial burglaries usually occur between midnight and 2:00 a.m., when it is dark and there are not many people around.  It is not typical for safe burglaries to occur only a few hours before the business is scheduled to open, nor is it typical for safe burglars to carry guns.

2. *Defense evidence.*

Detective Jennifer Valenzuela had investigated 500 commercial burglaries. Pry bars are commonly used to gain entrance in burglaries.  There was a motion detector inside the Nix store in the area where the safes were located.  If someone got into this area of the store, an alarm would go off.  There was another motion detector where the employees were located.  There was a video camera in the lobby.

Bourgeois testified that he, Mitchell and Toles intended to burglarize the Nix store, not rob it.  Bourgeois had, in the past, been convicted for committing numerous commercial burglaries, but never for robbery.  He considered himself an "experienced burglar."  He had purchased one of the crowbars, the circular saw and the Sawzall for the Nix store job.  The black duffle bag was his.

Ten days before the attempted break-in, Bourgeois happened to buy a money order at the Nix store.  This was the first time he had ever been into a Nix store.  It was almost closing time and, on his way out, Bourgeois noticed "it didn't look like they were putting the money away."  During this visit, he noticed the sign announcing the robbery prevention measures that were in effect at the store.  Bourgeois testified that, if the safe were on a time delay, then even if he forced an employee to enter the combination, the employee could also enter a code that would trigger an alarm and alert the police.  A few days after buying the money order, Bourgeois canvassed the store:  "I drove around the place.  I walked by the place a couple of times, and I eventually climbed onto the roof."

Bourgeois testified he never considered trying to break into the safe at the Nix store.  The plan was to use the crowbars to pry open the teller drawers and to steal cash and money orders from the teller stations.  He thought there would be money inside the

4

teller drawers and that blank money orders would be sitting out in the open, although he acknowledged he wasn't certain there would be any cash in the teller drawers.

He knew the store opened at 9:00 a.m. The plan was to break in, steal cash and money order forms, and have the job completed in "no more than three or four minutes." The plan was not to wait until 9:00 a.m. when the employees arrived for work and then commit a robbery. Bourgeois testified he brought along a ski mask because he knew the store had surveillance cameras.

They arrived at the Nix store about 4:45 a.m. They had intended to arrive earlier that morning, but Bourgeois overslept. Their plan quickly went awry. They tried to pry open the back door of the Nix store, but gave up after 30 or 45 seconds. So they broke the lock on a ladder located in a trash bin area and climbed onto the roof. There they started to saw through the floor in the crawlspace in order to gain entry to the Nix store from above. It was at this point that the police arrived.

Bourgeois testified it was his idea to burglarize the Nix store and that he had been in charge of the operation. He did not know there were guns in the blue duffel bag. He had never before used a gun while committing a commercial burglary and he had not asked either of his accomplices to bring a gun: "As a matter of fact, I told someone there was no need for a gun." The tools he brought along were for gaining entry to the building and breaking into the teller drawers.

## CONTENTION

The trial court erred by not instructing the jury on conspiracy to commit theft as a lesser included offense.

## DISCUSSION

*Lesser included offense instruction was required.*

Toles contends his conviction for conspiracy to commit robbery must be reversed because the trial court failed to instruct the jury, sua sponte, on the lesser included offense of conspiracy to commit theft. As the Attorney General properly acknowledges, this claim has merit.

5

As the Attorney General has noted, when Toles's codefendants Mitchell and Bourgeois previously appealed and raised the same issue, we held the trial court had erred by failing to give the lesser included offense instruction, and that the error was not harmless. (See *People v. Mitchell et al.* (July 15, 2011, B223657) [non.pub. opn.] [Klein, P.J., Croskey & Aldrich, JJ.], as modified on denial of rehearing July 27, 2011.) As we explained in the *Mitchell* decision:

"When there is substantial evidence that an element of the charged offense is missing, but that the accused is guilty of a lesser included offense, the court must instruct upon the lesser included offense, and must allow the jury to return the lesser conviction, even if not requested to do so." (*People v. Webster* (1991) 54 Cal.3d 411, 443.) "An offense is necessarily included within a charged offense 'if under the statutory definition of the charged offense it cannot be committed without committing the lesser offense, or if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed.' [Citation.]" (*People v. Toro* (1989) 47 Cal.3d 966, 972, disapproved on other grounds by *People v. Guiuan* (1998) 18 Cal.4th 558, 568, fn. 3.) "[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence. On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) " 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[]" ' that the lesser offense, but not the greater, was committed. [Citations.] [¶] In deciding whether there is substantial evidence of a lesser offense, courts should not evaluate the credibility of witnesses, a task for the jury." (*Ibid.*)

"Theft, in whatever form it happens to occur, is a necessarily included offense of robbery." (*People v. Ortega* (1998) 19 Cal.4th 686, 699, disapproved on another ground in *People v. Reed* (2006) 38 Cal.4th 1224, 1228.) "Conspiracy is a specific intent crime which requires proof of an intent to agree (or conspire) to commit a particular crime. [Citations.] ' "To sustain a conviction for conspiracy to commit a particular offense,

6

the prosecution must show not only that the conspirators intended to agree but also that they intended to commit the elements of that offense." [Citation.]' [Citation.] The elements of robbery are (1) a taking of personal property, (2) from the person or immediate presence of another, (3) through the use of force or fear, (4) with an intent to permanently deprive the owner of his property. [Citations.] Theft is a lesser included offense of robbery since theft does not require the use of force or fear in the taking. [Citation.]" (*People v. Kelley* (1990) 220 Cal.App.3d 1358, 1366.)

Here, the trial court was required to instruct on conspiracy to commit theft because there was substantial evidence tending to show the intended crime was theft rather than robbery. Bourgeois testified he had been the organizer of the conspiracy, the object of which was to burglarize the Nix store when it was unoccupied and to steal cash and money order forms. The ski masks were reasonably explained as an attempt to avoid identification by the surveillance cameras. The perpetrators were caught trying to enter the store almost three hours before it was scheduled to open, which tended to corroborate Bourgeois's testimony their aim was burglary rather than robbery. Moreover, Bourgeois testified he overslept and that the original plan had been to arrive even earlier. Bourgeois testified he never used guns to commit a commercial burglary. That Mitchell or Toles might have brought along guns, in effect disobeying Bourgeois's orders, did not necessarily mean Bourgeois was lying about the scope of the conspiracy. Bourgeois's testimony was circumstantially corroborated by the prosecution expert witness in several respects.

Although the jurors need not have believed Bourgeois's testimony, their instructions should have enabled them to give it due consideration by offering them the alternative verdict of conspiracy to commit theft. Because it is reasonably probable Toles would have obtained a more favorable outcome had the lesser included offense instruction been given, we conclude the error was not harmless.[2]

---

[2] Given our holding, there is no need to reach the second issue raised by Toles: that the trial court erred when it responded to a question from the jury during deliberations.

However, the remedy for this error need not be a new trial. Because the evidence clearly shows Toles was guilty of conspiracy to commit commercial burglary, and he does not argue otherwise, the People may choose either to retry him for conspiracy to commit robbery, or elect to forgo a retrial and have him sentenced on the basis of convictions for commercial burglary, conspiracy to commit commercial burglary, and possession of a firearm by a felon.

## DISPOSITION

The judgment is affirmed in part, reversed in part and remanded with directions. Toles's conviction on count 2 for conspiracy to commit robbery (§§ 182, subd. (a)(1), 211) is reversed. The People may choose to retry him for this offense within 60 days after the filing of the remittitur in the trial court, or the People may elect instead to have the trial court modify his judgment to reflect a conviction for conspiracy to commit commercial burglary (§§ 182, subd. (a)(1), 459) and resentence him accordingly.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

CROSKEY, J.

ALDRICH, J.

8